# In the United States Court of Federal Claims

### OFFICE OF SPECIAL MASTERS

| | | |
|---|---|---|
| * * * * * * * * * * * * * * * * * * * * | | |
| MAURICE GOODGAME, | * | |
| | * | No. 17-339V |
| Petitioner, | * | Special Master Christian J. Moran |
| | * | |
| v. | * | |
| | * | Filed: July 30, 2019 |
| SECRETARY OF HEALTH | * | |
| AND HUMAN SERVICES, | * | six-month severity requirement |
| | * | |
| | * | |
| Respondent. | * | |
| * * * * * * * * * * * * * * * * * * * * | | |

<u>Milton Clay Ragsdale and Allison L. Riley</u>, Ragsdale, LLC, Birmingham, AL, for petitioner;
<u>Adriana Teitel</u>, United States Dep't of Justice, Washington, DC, for respondent.

### **UNPUBLISHED DECISION DENYING COMPENSATION**[1]

Congress has authorized special masters in the Vaccine Program to award compensation to petitioners only when the petitioners establish that they suffered a severe injury, commonly demonstrated by an injury lasting more than six months. Here, although the petitioner, Maurice Goodgame, suffered an allergic reaction to a vaccination given to her on April 21, 2015, the evidence shows that she recovered from this reaction in less than six weeks. Thus, Ms. Goodgame cannot receive compensation.

---

[1] The E-Government Act, 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services), requires that the Court post this decision on its website (https://www.uscfc.uscourts.gov/aggregator/sources/7). This posting will make the decision available to anyone with the internet. Pursuant to Vaccine Rule 18(b), the parties have 14 days to file a motion proposing redaction of medical information or other information described in 42 U.S.C. § 300aa-12(d)(4). Any redactions ordered by the special master will appear in the document posted on the website.

Facts

Years before the vaccination, Ms. Goodgame suffered a problem in her left shoulder from which she appeared to recover.  See exhibit 16 at 12 (ordering MRI in 2009).  In 2013, she injured her left ankle in a car accident.  Exhibit 11 at 34.  In February 2014, she began to receive care from Dr. Shirin Banu.  Exhibit 6 at 38-39.

In early 2015, Ms. Goodgame worked as a tax preparer.  In the first two weeks of April 2015, she worked 33 and 38 hours.  Exhibit 27 at 28.  She appears not to have worked later in April, although it seems reasonable to conclude that the season for preparing taxes ended on April 15, 2015.

Ms. Goodgame saw Dr. Banu on April 21, 2015, for what appears to be a relatively routine visit.  Ms. Goodgame complained about her chronic left ankle pain.  Ms. Goodgame received the tetanus-diphtheria-acellular pertussis ("Tdap") vaccine in her left arm during this appointment.  Exhibit 3 at 1.  Dr. Banu expected to see Ms. Goodgame in follow up five months later.  Id. at 4.

On April 24, 2015, Ms. Goodgame visited the emergency room at Cooper Green Hospital.  She complained of having pain in her left arm where she received the vaccination.  Nurse Practitioner Lynn White diagnosed her as suffering from cellulitis and prescribed an antibiotic.  Exhibit 4 at 1.  After this visit to the emergency room, no medical records indicate that Ms. Goodgame sought medical attention for cellulitis.

Ms. Goodgame was involved in another car accident on June 6, 2015.  Exhibit 10 at 8.  Her most significant injury was a fractured left ankle.  Exhibit 10 at 5-6 (report from June 17, 2015).  She also suffered injuries to her neck and back as well as pain in her wrist.  In addition, she had a contusion in her left upper extremity.  Exhibit 10 at 8.

In response to the injuries sustained in the car accident, Ms. Goodgame sought care from an orthopedist, Donald Slappey.  In a medical history form dated June 23, 2015, Ms. Goodgame told Dr. Slappey that she had no problem with her left arm and no problem with both shoulders before the accident on June 6.  Exhibit 7 at 43.  Dr. Slappey noted that Ms. Goodgame had pain from her neck into her left shoulder but not in her arms.  Dr. Slappey detected a limited range of motion in her left trapezius muscle.  Probably based on Ms. Goodgame's account that she did not have these problems before the car accident, Dr. Slappey opined that the injuries related to the car accident.  Exhibit 7 at 18.  Dr. Slappey referred her to therapy.  Exhibit 7 at 102; exhibit 13 at 3.

2

Ms. Goodgame began physical therapy on July 7, 2015. This therapy lasted until October 26, 2015. Exhibit 19.

During therapy, Ms. Goodgame returned to Dr. Slappey on September 8, 2015. Dr. Slappey determined Ms. Goodgame had a good range of motion in her cervical spine but limited flexion in her lumbar spine. Dr. Slappey maintained the order for therapy. Exhibit 7 at 8.

On September 22, 2015, Ms. Goodgame had her previously scheduled follow-up appointment with Dr. Banu. Dr. Banu's history lists that she had an allergic reaction to the Tdap vaccination and was treated in urgent care. Dr. Banu also notes that Ms. Goodgame was involved in a motor vehicle accident in June 2015. Dr. Banu's record does not mention any complaints about shoulder pain. Exhibit 6 at 22-23.

On November 3, 2015, Ms. Goodgame had her final appointment with Dr. Slappey. She requested to be released from care and be allowed to maintain a home exercise program. Exhibit 7 at 7. Later in November, Ms. Goodgame applied for a job and indicated that she was available to work many days and many hours on each day. Exhibit 27 at 29.

Ms. Goodgame's pursuit of employment was successful because by February 2016 Ms. Goodgame was working. While at work in early February, Ms. Goodgame injured her right thumb in a desk drawer. Exhibit 10 at 23. This injury continued to affect her for several months.

On May 10, 2016, Ms. Goodgame consulted an orthopedic surgeon, Joseph Sherrell. While examining her, Dr. Sherrell noted "upper extremity motion is full." Exhibit 9 at 22.

## Procedural History

Ms. Goodgame initiated this litigation by filing a petition on March 13, 2017. At this time, Ms. Goodgame was representing herself and she appeared on her own behalf in the initial status conference held on April 19, 2017. At the initial status conference, Ms. Goodgame stated that she was not currently treating with any doctors and was not currently receiving any therapy.

Ms. Goodgame's counsel of record, Milton Clay Ragsdale, entered his appearance on June 12, 2017. Since then, Mr. Ragsdale with the assistance of Ms. Riley has ably represented Ms. Goodgame.

With the assistance of Mr. Ragsdale, Ms. Goodgame filed additional medical records. This led to the filing of a statement of completion on September 12, 2017.

The Secretary reviewed the material and recommended against compensation. The Secretary maintained that the evidence did not establish that Ms. Goodgame's reaction to the vaccine lasted more than six months. Resp't's Rep., filed Jan. 2, 2018, at 7.

On Ms. Goodgame's behalf, Mr. Ragsdale filed an amended petition on February 16, 2018. The amended petition alleged essentially two causes of action – one for an on-table injury and the other for an off-table injury. These causes of action were discussed in a February 21, 2018 status conference. In this status conference, the undersigned also advised Ms. Goodgame that a hearing to receive oral testimony about the severity of her injury was possible.

Following this status conference, Ms. Goodgame continued to submit evidence, such as medical records, affidavits, material from social media, employment records, and documents relating to her car accidents. This material was discussed in a June 11, 2018 status conference. To address the Secretary's arguments regarding the six-month issue, Mr. Ragsdale stated that Ms. Goodgame might seek to return to a doctor. Again, the undersigned raised the potential for a hearing. Mr. Ragsdale proposed that the parties attempt to resolve the case on an informal basis.

The Secretary filed a status report about the prospects of settlement on August 9, 2018. The Secretary took the position that the lack of evidence supporting a finding that Ms. Goodgame's vaccine-caused injury lasted more than six months prevented a settlement.

Because the parties did not resolve the case, the next step was to adjudicate the six-month issue. See order issued Sept. 5, 2018. Ms. Goodgame stated that although she was open to testifying at a hearing, she deferred to the special master's judgment as to whether a hearing was necessary. Pet'r's Status Rep., filed Oct. 5, 2018. The parties submitted a joint statement of issues on December 7, 2018.

In response to the joint statement of issues, the undersigned directed the parties to submit briefs. Order, issued Mar. 1, 2019. Ms. Goodgame submitted her brief regarding factual issues on March 29, 2019, and the Secretary responded on May 15, 2019. With the Secretary's submission, the issue is ready for adjudication.

## Standards for Adjudication

Petitioners are required to establish their cases by a preponderance of the evidence. 42 U.S.C. § 300aa–13(1)(a). The preponderance of the evidence standard requires a "trier of fact to believe that the existence of a fact is more probable than its nonexistence before [he] may find in favor of the party who has the burden to persuade the judge of the fact's existence." Moberly v. Sec'y of Health & Human Servs., 592 F.3d 1315, 1322 n.2 (Fed. Cir. 2010) (citations omitted).

The process for finding facts in the Vaccine Program begins with analyzing the medical records, which are required to be filed with the petition. 42 U.S.C. § 300aa–11(c)(2). Medical records that are created contemporaneously with the events they describe are presumed to be accurate. Cucuras v. Sec'y of Health & Human Servs., 993 F.2d 1525, 1528 (Fed. Cir. 1993).

## Analysis

The preponderant evidence in this case establishes that Ms. Goodgame had stopped suffering from any consequences to the vaccine-caused cellulitis by June 5, 2015. Ms. Goodgame's hand-written statement to Dr. Slappey on June 23, 2015, indicates that she was not having any problems with her left arm or her shoulders before having the car accident on June 6, 2015, weighs heavily on this point. The undersigned accepts Ms. Goodgame's representation to Dr. Slappey and takes her at her word. See Cucuras, 993 F.2d at 1528.

Ms. Goodgame's statement to Dr. Slappey is consistent with her activities in later April, May, and early June 2015. In that period, after visiting the emergency room on April 24, 2015, Ms. Goodgame did not seek medical attention for any left arm or left shoulder problem. The lack of medical visits suggests that Ms. Goodgame was not having any problem with her left arm or left shoulder. The lack of medical visits in this context contrasts with other situations in which Ms. Goodgame sought medical attention for relatively minor problems. See, e.g., exhibit 6 at 9 (record from September 13, 2016, seeking medical attention for a rash that had lasted about one week).

The lack of medical attention is particularly telling in Ms. Goodgame's case because during the summer of 2015, she was receiving medical attention for the injuries associated with her June 6, 2015 car accident. If Ms. Goodgame's left arm and left shoulder were as impaired as she seems to recall in her affidavits, then she would have raised the issue with Dr. Slappey or the physical therapists. Similarly, when she told Dr. Banu about her treatment for an allergic reaction to the Tdap

vaccine at an urgent care Center, Dr. Banu did not memorialize any discussion that Ms. Goodgame was continuing to have shoulder pain. See exhibit 6 at 22-23.[2]

Finally, a medical record from October 3, 2018, merits relatively little weight. As Dr. Ponce recorded, Ms. Goodgame came to see him "at the recommendation of her lawyer." Exhibit 24 at 6. This recommendation is not surprising as Mr. Ragsdale suggested in the June 11, 2018 status conference that he might encourage Ms. Goodgame to seek medical attention. In this context, Ms. Goodgame told Dr. Ponce that she "has had left shoulder pain since April 21, 2018 [sic], when she received an injection for a vaccine into her lateral deltoid. Since then, she has had significant pain and discomfort." Id. The overall context in which Ms. Goodgame sought medical attention to assist her claim in litigation diminishes the reliability of this record.

While medical records that memorialize the events happening contemporaneously with the time the medical record is created are presumed to be accurate, there must be a contemporaneity between the medical record and the events. Shapiro v. Sec'y of Health & Human Servs., 101 Fed. Cl. 532, 538-40 (2011) (ruling that a special master was arbitrary in crediting a medical record created one year after vaccination), recons. denied after remand on other grounds, 105 Fed. Cl. 353 (2012), aff'd without op., 503 F. App'x 952 (Fed. Cir. 2013). Here, Ms. Goodgame's assertion about three years of significant pain and discomfort is not enhanced simply because she told a doctor, who then memorialized it in a medical record.

For these reasons, the undersigned finds that Ms. Goodgame's left shoulder or left arm pain resolved before June 5, 2015.[3] Because the Vaccine Act requires that Ms. Goodgame suffer an injury for more than six months to receive compensation, 42 U.S.C. § 300aa–11(c)(1)(D), she cannot prevail.[4] See Starvridis v. Sec'y of Health & Human Servs., No. 07–261V, 2009 WL 3837479, at *4 (Fed.

---

[2] Ms. Goodgame averred that she actually did tell Dr. Banu about continuing shoulder pain. Exhibit 14 (affidavit) at 3. However, this assertion is not persuasive because it is not consistent with the otherwise comprehensive report from Dr. Banu.

[3] The undersigned is not determining precisely how long Ms. Goodgame's reaction to the April 21, 2015 vaccination lasted. The undersigned is simply finding that the reaction lasted fewer than six months.

[4] The Vaccine Act also allows a petitioner to receive compensation if either the vaccinee died or the vaccinee underwent a surgical procedure. However, Ms. Goodgame did not die and has not undergone a surgery for her reaction to the vaccine.

Cl. Spec. Mstr. Oct. 29, 2009); <u>Song v. Sec'y of Health & Human Servs.</u>, No. 92–279V, 1993 WL 534746 (Fed. Cl. Spec. Mstr. Dec. 15, 1993), <u>mot. for rev. denied</u>, 31 Fed. Cl. 61 (1994), <u>aff'd</u>, 41 F.3d 1520 (Fed. Cir. 1994) (table).

<u>Conclusion</u>

Ms. Goodgame has not met her burden of proof on one required element. Thus, the Clerk's Office is instructed to enter judgment in accord with this decision unless Ms. Goodgame files a motion for review.

**IT IS SO ORDERED.**

<u>s/Christian J. Moran</u>
Christian J. Moran
Special Master