# In the United States Court of Federal Claims

No. 17-339 V
(Filed Under Seal: October 29, 2021)
(Reissued: November 17, 2021) [1]

```
* * * * * * * * * * * * * * * ***
                                *
MAURICE GOODGAME,               *
                                *
                Petitioner,     *
                                *
        v.                      *
                                *
SECRETARY OF HEALTH AND         *
HUMAN SERVICES,                 *
                                *
                Respondent.     *
                                *
* * * * * * * * * * * * * * * ***
```

*Milton Clay Ragsdale* with whom was *Allison L. Riley*, Ragsdale, LLC, Birmingham, AL, for Petitioner.

*Adriana Teitel*, Trial Attorney, Civil Division, U.S. Department of Justice, Washington, D.C., for Respondent.

## OPINION AND ORDER

**SOMERS**, Judge.

On February 7, 2021, Petitioner, Maurice Goodgame, filed a motion in this Court seeking review of an order issued by Special Master Christian J. Moran denying her request for attorneys' fees and costs under the National Vaccine Injury Compensation Program ("Vaccine Act"), 42 U.S.C. § 300aa-10 *et seq.* The Special Master determined that the evidence submitted by Petitioner in support of her claim that she experienced the residual effects of her alleged vaccine injury for more than six months did not satisfy the reasonable basis standard. For the reasons that follow, the Special Master's decision is affirmed.

---

[1] On October 29, 2021, the Court issued this opinion and order under seal in accordance with Rule 18(b) of the Vaccine Rules (Appendix B) of the Court of Federal Claims. The Court provided the parties 14 days to propose redactions. The parties did not propose any redactions, and, accordingly, the Court reissues this opinion and order in its original form.

## BACKGROUND

### A. Factual History

The facts of this case are more fully set forth in two opinions issued by the Special Master; however, a brief recitation of the facts and procedural history is in order. *See Goodgame v. Sec'y of Health & Human Servs.*, No. 17-339 V, 2021 WL 1940817 (Fed. Cl. Apr. 16, 2021); *Goodgame v. Sec'y of Health & Human Servs.*, No. 17-339 V, 2019 WL 4165275 (Fed. Cl. July 30, 2019). On April 21, 2015, Petitioner received a tetanus-diphtheria-acellular pertussis ("Tdap") vaccination in her left shoulder during an appointment with her general practitioner, Dr. Shirin Banu, in Birmingham, Alabama. ECF No. 28 ¶ 7; ECF No. 12-1 at 4. Three days later, after experiencing pain at the injection site, Petitioner went to the emergency room for treatment. ECF No. 28 ¶ 11; ECF No. 1-4 at 1. A nurse practitioner diagnosed Petitioner with cellulitis, prescribed her antibiotics and Prednisone, and noted that she could return to work on April 27, 2015. ECF No. 1-4 at 4. No medical records indicate that, beyond this emergency room visit, Petitioner sought any further medical treatment for cellulitis or her alleged Shoulder Injury Related to Vaccine Administration ("SIRVA") until three and a half years after her alleged injury occurred and over a year and a half after she filed her petition when, "at the recommendation of her lawyer," she saw an orthopedist with regard to her alleged vaccine injury. ECF No. 49-1 at 6.

According to her medical records, after her April 2015 emergency room visit, Petitioner next sought medical care on June 6, 2015, for multiple injuries that she suffered in an automobile accident, including a fractured left ankle, injuries to her neck and back, and a contusion on her upper left arm. ECF No. 12-5 at 58; ECF No. 12-8 at 5-6, 8. Petitioner's injuries from the accident required her to seek care from an orthopedist, Dr. Donald Slappey, who referred her for physical therapy and prescribed Naproxen. ECF No. 25-1 at 3; ECF No. 12-5 at 34-35. On the intake form for her appointment with Dr. Slappey, Petitioner indicated that she had not had problems with her left arm or either shoulder prior to the accident. ECF No. 12-5 at 45 (Petitioner's handwritten response on her intake form noting pain in "both ankles, neck, back, left arm, both shoulders, left wrist, hips, left leg," placing the onset of the pain on June 6, 2015, and selecting "No" for having had similar symptoms before). In addition, in the records from her appointment, Dr. Slappey noted that Petitioner complained of, among other things, "neck pain into the left shoulder but not into the arms" and "left forearm pain" and that "[s]he denies any problems with any of these areas before the accident on June 6, 2015." ECF No. 12-5 at 18. Petitioner received physical therapy from July 7, 2015, until October 26, 2015. ECF No. 12-5 at 8; ECF No. 35-1. Her final appointment with Dr. Slappey occurred on November 3, 2015, during which he prescribed a home exercise program as part of her recovery from the automobile accident. ECF No. 12-5 at 7. Petitioner's medical records indicate that she did not discuss pain or other symptoms from her alleged vaccine injury with Dr. Slappey.

Additionally, on September 22, 2015, Petitioner returned for a previously scheduled follow-up appointment with her primary care physician, Dr. Banu. *See* ECF No. 12-4 at 22. Although records from the appointment note an allergic reaction to the Tdap vaccine, as the

Special Master determined, Dr. Banu's medical records from Petitioner's follow-up appointment do not reflect Petitioner complaining of left-shoulder pain from the vaccination.[2]  *Id.* at 22-23.

In fact, the Special Master noted that the lack of contemporaneous medical records indicating that Petitioner was experiencing left-arm or shoulder pain (after her April 24, 2015, emergency room visit) contrasts with the frequency with which she sought medical care for other ailments.  ECF No. 63 at 5 ("The lack of medical visits in this context contrasts with other situations in which [Petitioner] sought medical attention for relatively minor problems.").  This is despite Petitioner's allegation that she had to discontinue many of her community and family activities "during the relevant time period," ECF No. 32 at 4, and that at least through six months after the vaccination she "still experienced intermittent pain and limited range of motion to [her] left shoulder."  ECF No. 28 ¶ 10.

## B.  Procedural History

On March 13, 2017, Petitioner filed a *pro se*[3] petition seeking compensation for a non-table injury under the Vaccine Act.  ECF No. 1.  At the initial status conference, the Special Master noted that Petitioner informed him that she was "not currently treating with any doctors and was not currently receiving any therapy."  *Goodgame,* 2019 WL 4165275, at *3.  Also, at the initial status conference, the Special Master discussed with Petitioner the possibility of her retaining an attorney to assist with her case and directed her to the list of vaccine attorneys on the Office of Special Masters' website.  *See* ECF No. 5.  On July 12, 2017, the attorney currently representing Petitioner filed a motion to substitute as Petitioner's attorney of record and the Court substituted counsel that same day.  ECF No. 8.

After filing additional medical records, Petitioner filed a "statement of completion" on September 12, 2017, representing to the Special Master "that she has filed, to the best of her knowledge, all of the records required" to be entitled to compensation under the Vaccine Act.  ECF No. 18.  Following review of Petitioner's records, the Secretary responded on January 2, 2018, that Petitioner failed to establish through medical records that the residual effects of her vaccine injury lasted longer than the statutorily required six months.  ECF No. 23 ("In order to receive compensation, the Vaccine Act requires that the injured party suffer 'the residual effects or complications of [the injury] for more than 6 months after the administration of the vaccine . . . .' 42 U.S.C. § 300aa-11(c)(1)(D)(i).  The six-month sequelae requirement is an element 'required in the petition by section 300aa-11(c)(1),' and accordingly, petitioner bears the burden of proving the same.  *Id.* at § 300aa-13(a)(1)(A).").

On February 16, 2018, Petitioner filed an amended petition, which added a claim for a table injury of SIRVA related to her Tdap vaccination.[4]  ECF No. 28.  Attached to the amended

---

[2] There is a notation from Dr. Banu that Petitioner was "[g]oing for PT & taking Naprosyn for pain"; however, Petitioner's medical records clearly indicate that her prescription for physical therapy and Naprosyn were related to her car accident and not her alleged vaccine injury.  This point is discussed further *infra*.

[3] Although Petitioner filed her petition *pro se*, the record indicates that she did have the assistance of an attorney not admitted to the bar of this Court in drafting her petition.  *See* ECF No. 64-3 at 11.

[4] The amended petition actually states that the alleged SIRVA was related to the administration of a "seasonal influenza vaccine"; however, the remaining allegations in the petition make clear that the claim at issue is related to the administration of a Tdap vaccine.

petition was an updated affidavit from Petitioner, in which she claimed the residual effects from her vaccine lasted longer than the required six months.  ECF No. 28-1.  Petitioner did not attach any additional medical records or medical opinion with the amended petition.

During a June 11, 2018, status conference, Petitioner's attorney represented that Petitioner might see a doctor to attempt to cure the lack of medical evidence substantiating that the effects of Petitioner's alleged injury lasted longer than six months.  *Goodgame,* 2019 WL 4165275, at *2 ("To address the Secretary's arguments regarding the six-month issue, [the attorney] stated that [Petitioner] might seek to return to a doctor.").  On October 16, 2018, Petitioner filed medical records from Dr. Brent A. Ponce, dated October 3, 2018, describing his evaluation of Petitioner.  ECF No. 49.  Dr. Ponce wrote that Petitioner "unfortunately has had left shoulder pain since April 21, [2015] when she received an injection for a vaccine into her lateral deltoid.  Since then, she has had significant pain and discomfort."  ECF No. 49-1 at 7.  He notes on her medical record, "[d]ue to persistent symptoms, [Petitioner] now presents for further evaluation and treatment *at the recommendation of her lawyer*."  *Id.* (emphasis added).

Petitioner, on March 29, 2019, and Respondent, on May 15, 2019, filed their respective briefs on the issue of whether the residual effects of Petitioner's alleged injury lasted for the statutorily required six months.  On July 30, 2019, the Special Master denied Petitioner compensation.  *See generally Goodgame,* 2019 WL 4165275.  The Special Master found that Petitioner failed to prove that the residual effects of her alleged vaccine injury lasted more than six months as required under the Vaccine Act.  *Id.*  According to the Special Master, "although the petitioner . . . suffered an allergic reaction to a vaccination given to her on April 21, 2015, the evidence shows that she recovered from this reaction in less than six weeks.  Thus, [Petitioner] cannot receive compensation."  *Id.* at *1.  Petitioner did not seek review of this decision.

Pursuant to 42 U.S.C. § 300aa-15(e), on February 7, 2020, Petitioner filed a motion for attorneys' fees and costs, which may be awarded at the discretion of the Special Master despite an unfavorable decision if the underlying petition for compensation "was brought in good faith and there was a reasonable basis for the claim."  42 U.S.C. § 300aa-15(e)(1).  Because it is undisputed that the claim was brought in good faith, Petitioner's request for attorneys' fees and costs centered on the "reasonable basis" prong.  *Goodgame,* 2021 WL 1940817, at *5.  During the pendency of Petitioner's motion, proceedings were delayed while the Federal Circuit decided two cases related to the reasonable basis standard.  *See James-Cornelius v. Sec'y of Health & Human Servs.,* 984 F.3d 1374 (Fed. Cir. 2021); *Cottingham v. Sec'y of Health & Human Servs.,* 971 F.3d 1337 (Fed. Cir. 2020).  On April 16, 2021, after the Federal Circuit issued opinions in those cases, the Special Master denied Petitioner's motion and found that the evidence submitted "does not rise to the level to satisfy the reasonable basis standard. . . . [and] therefore, is not eligible for an award of attorneys' fees and costs."  *Goodgame,* 2021 WL 1940817, at *7-8.  On May 17, 2021, Petitioner filed a motion for review of the Special Master's decision denying attorneys' fees and costs.  ECF No. 83.  Following briefing by the parties and oral argument, the matter is now ripe for review.

## DISCUSSION

### A.  Legal Standard

Under the Vaccine Act, this Court possesses jurisdiction to review a special master's decision upon the filing of a motion for review from the unsuccessful party within thirty days of that decision.  42 U.S.C. § 300aa-12(e)(1).  When presented with a motion for review, the Court reviews the decision of a special master to determine whether it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  42 U.S.C. § 300aa–12(e)(2)(B); *e.g.*, *Rodriguez v. Sec'y of Health & Human Servs.*, 632 F.3d 1381, 1384 (Fed. Cir. 2011).  This Court reviews a special master's findings of fact under the arbitrary and capricious standard, discretionary rulings under the abuse of discretion standard, and a special master's determinations of law are reviewed *de novo*.  *Munn v. Sec'y of Health & Human Servs.*, 970 F.2d 863, 870 n.10 (Fed. Cir. 1992).  A special master's determination whether to award attorneys' fees and costs is entitled to deference.  *Saxton v. Sec'y of Health & Human Servs.*, 3 F.3d 1517, 1520 (Fed. Cir. 1993).  "This is appropriate in view of the [trier of fact's] superior understanding of the litigation and the desirability of avoiding frequent appellate review of what essentially are factual matters."  *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983).  "So long as the special master has 'considered the relevant evidence of record, drawn plausible inferences, [and stated] a rational basis for the decision,' reversible error is extremely difficult to establish."  *Silva v. Sec'y of Health & Human Servs.*, 108 Fed. Cl. 401, 405 (2012) (quoting *Hines v. Sec'y of Health & Human Servs.*, 940 F.2d 1518, 1528 (Fed. Cir. 1991)).  "An abuse of discretion may be found when (1) the court's decision is clearly unreasonable, arbitrary, or fanciful; (2) the decision is based on an erroneous conclusion of the law; (3) the court's findings are clearly erroneous; or (4) the record contains no evidence upon which the court rationally could have based its decision."  *Simmons v. Sec'y of Health & Human Servs.*, 875 F.3d 632, 635 (Fed. Cir. 2017) (citations omitted).

### B.  Analysis

Unlike most federal fee shifting statutes, under the Vaccine Act, reasonable attorneys' fees and costs *may* be awarded even to an unsuccessful petitioner "if the special master or court determines that the petition was brought in good faith and there was a reasonable basis for the claim for which the petition was brought."  42 U.S.C. § 300aa-15(e)(1).  According to the Federal Circuit, "good faith" and "reasonable basis" are two separate elements that must be met for an unsuccessful petitioner to be eligible for attorneys' fees and costs.  *See, e.g.*, *Simmons* 875 F.3d at 635.  In the instant case, Respondent did not challenge Petitioner's good faith, and the Court finds Respondent's position that good faith exists, and the Special Master's acceptance of that position, reasonable.  Accordingly, Petitioner's request for attorneys' fees and costs turns on the question of whether there was a reasonable basis for her claim.

In order to determine whether a petitioner had a reasonable basis for his or her claim, the Court "often relies on 'an objective standard determined by the totality of the circumstances.'" *Cottingham*, 971 F.3d at 1344 (quoting *Chuisano v. United States*, 116 Fed. Cl. 276, 286 (2014)). In a recent decision, the Federal Circuit held that "the quantum of objective evidence needed to establish reasonable basis for a claim, including causation, is 'lower than the preponderant

evidence standard required to prove entitlement to compensation,' but 'more than a mere scintilla.'" *James-Cornelius*, 984 F.3d at 1379 (quoting *Cottingham*, 971 F.3d at 1346). Although "the Federal Circuit has not explained with any precision how to assess whether a quantum of evidence constitutes more than a mere scintilla, it is generally accepted that a petitioner must furnish *some evidence* in support of the claim for which the petition is brought to establish the statutory requirement of reasonable basis." *Wirtshafter v. Sec'y of Health & Human Servs.*, No. 18-1562V, 2021 WL 4188429, at *5 (Fed. Cl. Aug. 26, 2021) (citations and internal quotations omitted). Thus, while the quantum of evidence needed to establish reasonable basis may be less than precise, precedent dictates that reasonable basis is a standard that a petitioner must meet by submitting objective evidence.

In terms of the evidence that must be submitted to support a vaccine injury claim, the Vaccine Act provides specific requirements that are useful in determining whether a petitioner has established a reasonable basis. Pursuant to the Vaccine Act, a petition must include "an affidavit, and supporting documentation, demonstrating that the person who suffered such injury":

     (1) received a vaccine listed on the Vaccine Injury Table;

     (2) received the vaccination in the United States, or under certain stated circumstances outside of the United States;

     (3) sustained (or had significantly aggravated) an injury as set forth in the Vaccine Injury Table (42 C.F.R. § 100.3(e)) or that was caused by the vaccine;

     (4) experienced the residual effects of the injury for more than six months, died, or required an in-patient hospitalization with surgical intervention; and

     (5) has not previously collected an award or settlement of a civil action for damages for the same injury.

42 U.S.C. § 300aa-11(c)(1). In addition, the Vaccine Act provides that a petitioner must "demonstrate[] by a preponderance of the evidence" all five of the above "matters." 42 U.S.C. § 300aa-13(a)(1). And importantly, the Court may not find that a petitioner has demonstrated the five above matters by a preponderance of the evidence "based on the claims of a petitioner alone, unsubstantiated by medical records or by medical opinion." *Id*.

In sum, in order to establish a reasonable basis, a petitioner must submit objective evidence in support of his or her claim and that evidence must include an affidavit and supporting documentation, including medical records or medical opinion, that could demonstrate that petitioner satisfies all five matters. Of course, a petitioner could submit objective evidence that a special master determines does not cross the preponderance threshold and still have a reasonable basis for his or her claim. However, on the other hand, a petitioner who has not submitted objective evidence that is substantiated by medical records or medical opinion—such that the Vaccine Act would permit a special master to "find that on the record as a whole" that petitioner has established all five matters—has not submitted evidence sufficient to establish a

reasonable basis for his or her claim. Stated differently, a claim that on its face (without any weighing of the evidence) is not supported by the materials required by the Vaccine Act for a special master to be able legally to award compensation does not have a reasonable basis.[5]  *See L.P. v. Sec'y of Health & Human Servs.*, 150 Fed. Cl. 396, 403 (2020) ("If it was unreasonable to proceed further upon the basis of the medical records submitted with the petition, it was unreasonable to bring the claim in the first place.") (citations omitted); *Cortez v. Sec'y of Health & Human Servs.*, No. 09-176V, 2014 WL 1604002, at *8 (Fed. Cl. Mar. 26, 2014) ("[B]ecause I find that reasonable basis was lacking at the time the action was filed, there is no need to consider later points in the procedural history.").

Turning to the instant claim, in her motion for review, Petitioner asserts that the Special Master applied the wrong legal standard in determining that she did not have a reasonable basis for her claim.  *See* ECF No. 83.  Additionally, Petitioner contends that the Special Master's factual findings were clearly erroneous and his application of those factual findings to his decision to deny attorneys' fees and costs failed to articulate a rational basis, and, therefore, his decision was arbitrary, capricious, or an abuse of discretion.  The Court disagrees.

## A.  The Special Master Applied the Correct Legal Standard

The Special Master applied the correct legal standard to determine that Petitioner was not entitled to attorneys' fees and costs.  Although the Special Master may not have explained his application of the law in the clearest manner (or to the satisfaction of Petitioner), a review of the Special Master's decision indicates that he applied the correct legal standard in exercising his discretion to deny fees and costs based on the lack of sufficient evidentiary support to form a reasonable basis for Petitioner's claim.  The Special Master cited to and applied the correct law to the facts of the claim, and his decision is consistent with precedent and the Vaccine Act.

While Petitioner may disagree with the Special Master's application of the law to her claim, at base, much of Petitioner's argument against that application seems to be about semantics.  For instance, Petitioner takes particular exception to the Special Master's statement that the Federal Circuit gave the reasonable basis standard "some teeth in *Perreira*."  *Goodgame*, 2021 WL 1940817, at *4.  Whether the Special Master is correct in that assertion appears to the Court ultimately to be immaterial to his decision.  The same is true about another statement in the Special Master's decision that Petitioner takes exception to: "[t]hese affidavits mean that [Petitioner] has presented . . . 'more than a mere scintilla' of evidence on this point."  *Id.*  Again, as will be discussed in more detail below, given the lack of medical evidence to substantiate Petitioner's claim, whether her affidavit was more than a mere scintilla of evidence is beside the ultimate point.  In order to prove a vaccine injury, according to the Vaccine Act, a petitioner must submit medical evidence to substantiate the matters required to be demonstrated.  While

---

[5] This is not to say that a petitioner could not have a reasonable basis to bring a claim and then lose that reasonable basis if, for instance, like in *Perreira*, the medical opinion that was crucial to establishing a reasonable basis was later determined to not have a sound scientific basis.  *Perreira v. Sec'y of Health & Human Servs.*, 33 F.3d 1375, 1377 (Fed. Cir. 1994).  In *Perreira*, at least for some period of time, a reasonable basis existed, but when the claim was no longer supported by a scientifically based medical opinion, reasonable basis ceased to exist.  *Id.*

Petitioner submitted some medical evidence of causation,[6] as the Special Master determined, Petitioner submitted no timely medical evidence to substantiate the six-month duration requirement. Accordingly, the fact that the Special Master noted that Petitioner's affidavit was "more than a mere scintilla of evidence," but also concluded that Petitioner lacked a reasonable basis, does not mean the Special Master applied the wrong legal standard. This is especially true when, in this case, and unlike *James-Cornelius* or *Cottingham*, the affidavit was not supported by medical evidence.

The Court suspects that any confusion regarding the application of the law to the facts in this case may be the result of the Special Master's emphasis on the fact that the record only contained medical evidence that *disproved* the requisite duration of injury rather than focusing on the how the record was entirely devoid of medical evidence *supporting* the requisite duration of injury. In other words, and as more fully explained below, the Special Master's method of explaining the medical evidence does not mean that he applied the incorrect legal standard. *Wein v. Sec'y of Health & Human Servs.*, No. 18-262V, 2020 WL 4747780, at *5 (Fed. Cl. July 1, 2020) (quoting *Murphy v. Sec'y of Health & Human Servs.*, 30 Fed. Cl. 60, 62 (1993), *aff'd without opinion*, 48 F.3d 1236 (Fed. Cir. 1995) ("When 'the medical and other written records contradict the claims brought forth in the petition,' a special master is not arbitrary in concluding that reasonable basis for the petition did not exist."). Instead, it only means that the Special Master, more familiar with the facts of the claim than this Court, explained his decision differently. Ultimately, the Special Master recognized that the law required Petitioner to substantiate her claim with medical evidence, not with "the claims of the petitioner alone," 42 U.S.C. § 300aa-13(a)(1), and that is the legal standard he correctly applied.

## B.  The Special Master's Decision was not Arbitrary, Capricious, or an Abuse of Discretion

In this case, it is the fourth matter—that petitioner "experienced the residual effects of the injury for more than six months"[7]—that is in question. Accordingly, in order to establish that there was a reasonable basis for her claim, Petitioner needed to demonstrate to the Special Master that there was objective evidence in the record, including medical records or medical opinion, of a vaccine injury lasting more than six months. *Cottingham*, 971 F.3d at 1344 ("Reasonable basis, on the other hand, is an objective test, satisfied through objective evidence."). Thus, because the reasonable basis standard is met by submitting objective evidence, any examination of whether the Special Master's determination was arbitrary, capricious, or an abuse of discretion must begin with the affidavits, supporting documentation, and medical records or medical opinion that were attached to the petition, amended petition, or otherwise filed before the Special Master issued his decision denying compensation.

With Petitioner's original petition, she submitted her own affidavit, along with medical records from Dr. Banu and her April 24, 2015, emergency room visit. ECF Nos. 1-3, 1-4, 1-5. Although Petitioner's affidavit states that "the numbness and soreness lasted for over six months

---

[6] It is questionable whether the medical evidence submitted on causation would have been sufficient to meet the required elements for SIRVA if Respondent had chosen to challenge Petitioner's claim on causation grounds instead of on the lack of evidence to substantiate the six-month duration requirement. *See* 42 C.F.R. § 100.3(c)(10).

[7] It is uncontested that Petitioner did not die or require an in-patient hospitalization with surgical intervention as a result of her alleged vaccine injury; thus, it is the six-month sequelae that Petitioner was required to demonstrate.

and to this date I still have occasional discomfort in my arm if I sleep on it or try to lift something heavy," ECF No. 1-5, the medical records attached to the petition offer nothing to substantiate her claim that her injury lasted more than six months.  ECF Nos. 1-3, 1-4.  In fact, the attached medical records are silent on this crucial element of Petitioner's claim.  Thus, at the time that the initial petition was filed, there was no medical evidence to support her claim that the effects of her injury lasted more than six months.

After the filing of the initial petition and up to the point that Petitioner submitted her statement of completion on September 12, 2017, Petitioner filed twelve exhibits, which consisted of additional medical records.  As with the two medical records attached to Petitioner's initial petition, none of these additional medical records offer any evidence to substantiate her claim that the residual effects of her alleged injury lasted more than six months.  Accordingly, at the time Petitioner filed her statement of completion, affirming that "she has filed, to the best of her knowledge, all of the records required by 42 U.S.C. §11(c) pertaining to the above-captioned case," ECF No. 18, Petitioner still had not filed any medical records or medical opinion that her claim met the six-month requirement.

On February 16, 2018, Petitioner submitted an amended petition adding a table SIRVA claim.  Petitioner submitted a more detailed affidavit with this amended petition; however, no medical records or medical opinion were submitted with the amended petition.  Thus, at the time the amended petition was filed, there was still no medical evidence to substantiate that the residual effects of Petitioner's alleged vaccine injury lasted more than six months.

Finally, in October 2018, one and a half years after she filed her petition and three and a half years after her alleged injury, Petitioner submitted a medical record from a visit with an orthopedist, Dr. Ponce, that she arranged "at the recommendation of her lawyer."  ECF No. 49-1 at 2.  In addition, in March 2019, two years after she filed her petition and almost four years after her alleged injury, she submitted additional medical records from Dr. Ponce.  ECF Nos. 55-1, 57-1.  The Special Master determined that the records from Dr. Ponce "carr[y] negligible weight because [they were] prepared in the context of litigation and more than three years after [Petitioner] informed Dr. Slappey that she was not having any shoulder problems before the car accident."  *Goodgame*, 2021 WL 1940817, at *3 n.3.  Petitioner seems to concur with the Special Master's assessment that these medical records are of negligible weight: in her brief to the Special Master arguing for compensation, she dedicated a total of twelve words to how the results of her October 2018 visit to an orthopedist address the question of whether the effects of her alleged injury lasted more than six months.  ECF No. 56 at 5 ("[A]n MRI in October 2018 revealed a symptomatic left rotator cuff tear.").[8]

The Court agrees with the Special Master's assessment that, given the context and the timing of this evidence, it does not support a finding of reasonable basis.  First, as Petitioner obviously made clear to Dr. Ponce, her visit was made in the context of litigation.  While that is not inherently problematic, because the question here is whether Petitioner experienced the

---

[8] Petitioner spends slightly more time discussing her self-reporting to Dr. Ponce of her "persistent 'left shoulder pain.'"  ECF No. 56 at 5.  This reporting of pain by Petitioner does not appear in any of her contemporaneous medical records other than the record of her original emergency room visit three days after her alleged vaccine injury.

effects of her alleged injury for more than six months, seeing an orthopedist at her lawyer's behest and then reporting pain to the orthopedist that is not reported in contemporaneous medical records gives this portion of the records little, if any, weight. More importantly, the records offer no indication that the vaccine administration caused any of the shoulder related observations Dr. Ponce noted. These observations were taken over three years after the vaccine administration during which time any number of things could have caused indications on her MRI, including the fact that Petitioner was involved in a significant automobile accident, had a previously repaired rotator cuff tear, and the presence of *os acromiale*—all of which could have caused her alleged shoulder pain. *See* 42 C.F.R. § 100.3(c)(10).

It is possible that if medical records like those from Dr. Ponce had been submitted early in this litigation—while there was time for additional investigation and introduction of additional medical records or medical opinion on Petitioner's behalf—the records may have supported a reasonable basis. However, when submitted at the end of the litigation, directly before the Special Master was to rule on the merits, these records do not have the same effect. *See James-Cornelius*, 984 F.3d at 1379 ("[A]bsence of an express medical opinion on causation is not necessarily dispositive of whether a claim has a reasonable basis, *especially when the case is in its early stages and counsel may not have had the opportunity to retain qualified experts*.") (emphasis added); *cf. Perreira v. Sec'y of Health & Human Servs.*, 33 F.3d 1375, 1377 (Fed. Cir. 1994). This is because no reasonable person could conclude that the records from Dr. Ponce are even arguably preponderant evidence that the shoulder related observations noted by Dr. Ponce resulted from vaccine administration. While medical records that are clearly non-preponderant might support a reasonable basis for a claim when there is time to gather more evidence or introduce medical opinion, facially non-preponderant evidence cannot be slipped into the record at the eleventh hour to create reasonable basis. The Special Master was thus correct to give these records "negligible weight" in his reasonable basis analysis. *Goodgame*, 2021 WL 1940817, at *3 n.3. At the time of this evidence's submission, all that was left in the case was for the Secretary to file a final response and the Special Master to rule on the merits of Petitioner's claim that the residual effects of her alleged injury lasted more than six months. At that late stage of the litigation, more was needed for these medical records to constitute a reasonable basis.[9]

What is more, even to the extent any of Dr. Ponce's observations could be linked to SIRVA, Petitioner never attempted to draw that link—either by having Dr. Ponce offer an opinion thereon or by introducing other medical opinion to help establish the linkage.[10] Petitioner had the burden to demonstrate through objective evidence that she suffered the residual effects of her alleged vaccine injury for more than six months. Yet, Petitioner made little attempt until after the ruling on the merits of her claim to draw a link between Dr. Ponce's records and the six-month duration requirement. It cannot be the case that Petitioner can submit medical records, fail to demonstrate the potential relevance of those records during the merits

---

[9] It may be the case that something more than Dr. Ponce's records would have been necessary to establish a reasonable basis for Petitioner's claim even if such records had existed earlier in the litigation. That question, however, is not before the Court.

[10] As is discussed immediately below, Petitioner did offer medical journal articles attempting to make a link between her October 2018 medical records and her alleged SIRVA; however, she submitted those articles in support of her attorney's request for fees **after** the Special Master had decided the merits of her case.

phase of the claim, and then, during the attorneys' fee phase, suddenly rely upon those records to argue the existence of a reasonable basis.

Seemingly realizing the lack of the statutorily required medical records or medical opinion needed to substantiate the argument that a reasonable basis existed for Petitioner's claim, Petitioner's counsel attempts in his memorandum to this Court to make it appear that this evidence existed in the record before the Special Master. This is unacceptable.

First, Petitioner's counsel states in his Memorandum of Objections that

the Special Master erroneously finds that medical records from Petitioner's visit to Dr. Banu five months post-vaccination fail to "mention any complaints about shoulder pain." However, these medical records do reference petitioner's shoulder pain: "she reports she had a (sic) allergic reaction to Tdap & was treated in urgent care. *Going for PT & taking Naprosyn for pain* . . . ."

ECF No. 83-1 at 13 (emphasis added) (citation omitted). This statement is a selective quotation of Dr. Banu's notes that attempts to make it *appear* as though Petitioner was "[g]oing to PT & taking Naprosyn for pain" *because of* her alleged vaccine injury. Counsel's representation fails to acknowledge that Dr. Banu also noted that Petitioner "had an MVA [motor vehicle accident] in June" and, more importantly, that the physical therapy and Naprosyn that Petitioner was prescribed were for her car accident-related injuries. In other words, the only indication in Dr. Banu's notes that even arguably "reference petitioner's shoulder pain" is the reference to physical therapy and taking Naprosyn, but these were related to a car accident, not Petitioner's alleged vaccine injury. *See* ECF No. 12-5 at 35 (Dr. Slappey's medical record notating prescribing Naproxen (i.e., Naprosyn) for injuries Petitioner sustained following the car accident). In fact, Petitioner was not treated for shoulder pain as part of her physical therapy, whether caused by the car accident or her alleged vaccine injury. *See* ECF No. 35-1 (physical therapy records indicating that Petitioner was being treated for "L leg pain," "R ankle pain and stiffness," "midline cervical pain," and "back pain"). Counsel's argument that the Special Master "erroneously finds" that medical records "five months post-vaccination fail to 'mention any complaints about shoulder pain'" is an objectively unreasonable statement of the factual record and falls below the duty of candor owed to this Court.

What is particularly egregious to the Court is that Petitioner's counsel clearly knows that his client was only prescribed physical therapy and Naprosyn for a car accident. Counsel even states the same in attempting to discredit a separate finding by the Special Master:

The Special Master also discredits Petitioner's testimony because she "does not explain why she did not seek medical attention for the alleged shoulder problem while she was receiving physical therapy during the summer 2015," however, *the undisputed evidence is that the P.T. was ordered for an entirely different injury, unrelated to her SIRVA.*

ECF No. 83-1 at 15 (emphasis added).

11

Second, the docket entries in this case show that a full 14 months **AFTER** the Special Master issued his decision denying compensation and 18 months **AFTER** Petitioner submitted her final brief in support of her claim, counsel for Petitioner submitted two medical journal articles in the attorneys' fee proceedings in an attempt to bolster his assertion that there was a reasonable basis for Petitioner's claim. ECF Nos. 72-1, 72-2. Counsel then, in his filings before this Court, asserts that these "articles explaining how the vaccine caused those physical changes[] are objective, relevant evidence that corroborates Petitioner's testimony, and the Special Master erred by failing to consider it." ECF No. 83-1 at 14. Yet, Petitioner's counsel fails to disclose to the Court in making this argument that these medical journal articles were, in fact, *not* before the Special Master when he was determining the merits of Petitioner's claim.

The Court is at a complete loss as to how Petitioner's counsel believes these articles submitted **AFTER** judgment on the merits was entered could possibly help form a reasonable basis for Petitioner's claim or demonstrate that the Special Master ignored relevant evidence. As counsel is hopefully well aware, the time for introducing these articles was **BEFORE** the Special Master issued his ruling on the merits, when they could aid his client's attempt to be compensated for her alleged injury, not **AFTER** his client had lost on the merits and they could only aid his attempt to collect fees. Counsel's assertion that the "articles explaining how the vaccine caused those physical changes, are objective, relevant evidence that corroborates Petitioner's testimony"—when they were submitted after the merits portion of Petitioner's case was closed—is objectively unreasonable. This assertion misrepresents to the Court the evidence that was actually before the Special Master at the merits stage of the instant case. Like counsel's argument that Dr. Banu's records demonstrate that Petitioner was experiencing shoulder pain five months post-vaccine, counsel's attempt to argue to this Court that the Special Master ignored two medical journals in the record that, in fact, were *not in the record* falls below the duty of candor owed to the Court.[11]

It appears that counsel's misrepresentations are an effort to draw the evidence supporting Petitioner's claim more in line with two recent Federal Circuit decisions: *Cottingham v. Sec'y of Health & Human Servs.*, 971 F.3d 1337 (Fed. Cir. 2020), and *James-Cornelius v. Sec'y of Health & Human Servs.*, 984 F.3d 1374 (Fed. Cir. 2021). These decisions, however, are factually distinguishable from the case at bar. In those cases, for which the question at issue was causation, the Federal Circuit determined that there was medical record evidence supporting causation that the respective special masters ignored.[12] In the instant case, for which the

---

[11] Mindful of the need to encourage counsel to bring Vaccine Act claims and the fact that Petitioner's counsel, by virtue of the rulings of this Court and the Special Master that a reasonable basis did not exist, will not be receiving what would otherwise be a not insignificant award of attorneys' fees, the Court will not require Petitioner's counsel to show cause why Rule 11 sanctions should not be issued for these apparent factual misrepresentations to the Court.

[12] For instance, in *Cottingham*, the Federal Circuit observed that:

Medical records can support causation even where the records provide only circumstantial evidence of causation. Here, the record contains *seven medical-examination reports detailing K.C.'s medical history that address injuries she suffered*. The Gardasil® package insert *links K.C.'s injuries to adverse reactions associated with Gardasil's® administration*. The package insert contains a section titled "Adverse Reactions," which identifies dizziness, headaches, vomiting, and syncope as adverse reactions to the Gardasil® vaccination. J.A. 40–46. *K.C.'s medical records report that she suffered each of those injuries* after receiving the Gardasil®

question at issue is the duration of the residual effects of Petitioner's alleged injury, the Special Master determined, and the record reflects the fact, that there was no medical evidence supporting the claim that Petitioner's alleged injury lasted at least six months.  The medical evidence in this case is simply not analogous to the evidence in *Cottingham* and *James-Cornelius*.  In those cases, the petitioners' medical records supported a vaccine-related causation for their injuries.  Here, Petitioner's medical records do not substantiate, and likely actually refute, the allegation that the residual effects of her alleged vaccine injury lasted at least six months.

What *Cottingham* and *James-Cornelius* make clear is that "for purposes of establishing a reasonable basis for a claim, '[m]edical records can support [reasonable basis] even where the records provide only circumstantial evidence . . . .'"  *James-Cornelius*, 984 F.3d at 1379 (quoting *Cottingham*, 971 F.3d at 1346).  However, the medical records here do not even provide circumstantial evidence that the residual effects of Petitioner's injury lasted more than six months.  Thus, unlike in *Cottingham* and *James-Cornelius*, Petitioner's affidavit cannot be "taken together with the corroborating medical records included in the petition" such that it "amount[s] to relevant objective evidence."  *See id*. at 1381.

In sum, Petitioner's counsel's attempt to rely on medical evidence that was simply not in the record at the merits stage of this case to demonstrate that the Special Master's decision was in error is unavailing.  Instead, the record in this case supports the Special Master's factual findings and thus his decision not to award fees and costs.

---

vaccine.  *K.C.'s medical records paired with the Gardasil® package insert thus constitute at minimum circumstantial, objective evidence supporting causation*.

971 F.3d at 1346 (emphasis added) (internal citations omitted).  And in *James-Cornelius*: "When taken together *with the corroborating medical records included in the petition and the Gardasil® package insert*, the factual testimony provided by E.J. and Ms. James-Cornelius amount to relevant objective evidence for supporting causation."  984 F.3d at 1381 (emphasis added).  In addition, the Circuit noted that:

> *E.J.'s medical records here provide factual support* for Ms. James-Cornelius's reasonable basis claim . . . .  *The records showed* that E.J. experienced a series of symptoms after receiving Gardasil® vaccinations, including headache and syncope, adverse reactions recited in the vaccine's package insert.  *The petition also documents a medical diagnosis* of dysautonomia and a working diagnosis of POTS for E.J.'s symptoms, *as well as three medical journal articles* allegedly hypothesizing that these diseases can be caused by the Gardasil® vaccine.  Further, at least one physician, Dr. Kim, wrote *"??VAERS" in a medical report*, *suggesting Dr. Kim's belief that E.J.'s vaccines could have caused his symptoms*.

*Id.* at 1379-1380 (emphasis added) (internal citations omitted).

13

## CONCLUSION

For the forgoing reasons, the Special Master's decision denying Petitioner attorneys' fees and costs is **AFFIRMED**.  The Clerk shall enter judgment accordingly.

**IT IS SO ORDERED**.

s/ Zachary N. Somers
ZACHARY N. SOMERS
Judge